U.S. COURT OF APPEALS
RECEIVED
Aug 31, 2026
FIFTH CIRCUIT

**No. 26-10606**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

Samuel Randles; Patrick Wayne Tuter; Conghua Yan; Kaitlan Ross,
Plaintiffs - Appellants

v.

Jimmy Blacklock, in his **official** capacity as Chief Justice of the Supreme Court of Texas; David L. Evans, in his **official** and **individual** capacities as the statutory Presiding Judge (**regional administrative officer**) of the Eighth **Administrative** Judicial Region under **Tex. Gov't Code ch. 74**; Susan Brown, in her **official** capacity as Presiding Judge of the Eleventh Administrative Judicial Region; Ray Wheless, in his **official** capacity as Presiding Judge of the First Administrative Judicial Region; Crawford R. Randy Catterton, in his **official** capacity as a retired judge sitting by assignment; William Wren Bill Harris, in his **official** capacity as a retired judge sitting by assignment; Sherill Youngberg Dean, in her **official** capacity as a retired judge sitting by assignment; Kim Cooks, in her **official** capacity as a retired judge sitting by assignment; John Roach, Jr., in his **official** capacity as Presiding Judge; Cynthia Favila Terry, in her **official** capacity as Presiding Judge of the 325th District Court of Tarrant County, Texas and in her individual capacity; Lisa Grimaldi, in her **official** capacity as Court Coordinator of the 325th District Court of Tarrant County, Texas and, to the extent permitted by law, in her individual capacity; Kirk Moss, in his **individual** capacity; Tom Wilder, in his **official** and **individual** capacities as District Clerk of Tarrant County, Texas; Tarrant County, Texas, a political subdivision,

Defendants - Appellees

Appeal from the U.S. District Court for the Northern District of Texas,
Fort Worth Division, No. 4:25-cv-01422-O-BP (Hon. Reed O'Connor)

**JOINT BRIEF OF PLAINTIFFS-APPELLANTS SAMUEL RANDLES, KAITLAN ROSS, PATRICK WAYNE TUTER, AND CONGHUA YAN**

**Samuel Randles**
5001 SH 114 E.
Apt. 1313
Roanoke, TX
76262
(214) 250-6187

**Kaitlan Ross**
915 County Road
2719
Goldthwaite, TX
76844
(512) 529-0294

**Patrick Wayne Tuter**
430 Christi Lane
Princeton, TX
75407
(214) 497-6152

**Conghua Yan**
2140 E. Southlake
Blvd.
Suite L-439
Southlake, TX
76092
(214) 228-1886

## Certificate of Interested Persons

The undersigned pro se Plaintiffs-Appellants certify that the following persons and entities have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

- Plaintiffs-Appellants: Samuel Randles; Patrick Wayne Tuter; Conghua Yan; and Kaitlan Ross.
- Defendants-Appellees: Jimmy Blacklock; David L. Evans; Susan Brown; Ray Wheless; Crawford R. "Randy" Catterton; William Wren "Bill" Harris; Sherill Youngberg Dean; Kim Cooks; John Roach, Jr.; Cynthia Favila Terry; Lisa Grimaldi; Kirk Moss; Tom Wilder; and Tarrant County, Texas, in the capacities reflected in the Fifth Circuit caption.
- Lower court: United States District Court for the Northern District of Texas, Fort Worth Division; Chief District Judge Reed O'Connor; and Magistrate Judge Hal R. Ray, Jr.
- Counsel identified in the available docket materials: Scot Macdonald Graydon; Karen S. Mitchell; Katherine E. Owens; and Craig Manning Price.

*/s/ Samuel Randles* *(/s/ Kaitlan Ross)*

*/s/ Patrick Wayne Tuter* *(/s/ Conghua Yan)*

## Statement Regarding Oral Argument

Oral argument is requested. One defendant's motion produced a judgment against four plaintiffs, fourteen defendants, seven counts, several capacities, and different remedies. Argument would assist the Court in applying party-presentation principles, *Taylor*'s same-allegations boundary, and the limits that standing, abstention, immunity, municipal liability, and appellate disposition impose for each defendant, function, and remedy.

## Table of Contents

Certificate of Interested Persons ........................................................... 2

Statement Regarding Oral Argument ........................................................... 3

Table of Contents ........................................................... 4

Table of Authorities ........................................................... 8

Jurisdictional Statement ........................................................... 11

Issues Presented ........................................................... 12

Statement Regarding Joint Pro Se Presentation and Claim-Specific Adoption ...... 13

Statement of the Case ........................................................... 14

- A. The action challenges distinct procedures preceding the injuries, not the merits of state judgments. ........................................................... 14
- B. The court compressed the response period while expanding one motion across every defendant. ........................................................... 18
- C. The objections preserved that formal notice did not cure the claim-specific mismatch. ........................................................... 20
- D. The adoption order granted ECF No. 15 but the Rule 58 judgment dismissed the entire action. ........................................................... 21
- E. Rule 59(e) gave the district court a direct opportunity to correct the judgment. ........................................................... 22

Summary of the Argument ........................................................... 22

Standards of Review ........................................................................................23

Argument..........................................................................................................25

I. The district court reversibly erred by replacing claim-specific adversarial briefing with a twice-compressed "as if" proxy process. .......................................25

A. Party presentation did not permit the court to substitute a counterfactual assumption for the grounds the parties actually presented. ................................25

B. *Taylor*'s no-prejudice rationale applies only when the material allegations and dispositive ground are the same. .....................................................................26

C. The seven-day universal-proxy deadline and premature FCR abused the court's briefing discretion. .........................................................................27

D. Formal notice and protective filings did not supply the missing claim-specific adversarial process or erase prejudice. .............................................................29

II. Count VI alone establishes harmful error because the County policy claim required its own Rule 12 and *Monell* analysis. ......................................................31

A. Threshold doctrines required separate application to each claim, defendant, function, capacity, and remedy. ....................................................................32

B. Count VI pleads a County policy exception for Moss, and that single noninterchangeable lane independently requires remand. ..................................33

C. Count VII required separate access-to-courts and retaliation analyses. .........39

D. Yan's individual claims against Wilder, Grimaldi, and Moss require separate analysis of each role, state-action theory, causal link, and immunity. ................40

E. Wheless's motion did not establish the same disposition even within Tuter's separate claims. ...........................................................................................43

F. Tuter's direct same-case spouse-mediator allegation required separate treatment of Roach's role and requested relief. ..................................................45

G. The Chapter 74 claims required the court to separate administrative conduct, adjudicative conduct, and each requested remedy. ............................................47

H. Randles's Count V individual-capacity claim against Evans required its own function and qualified-immunity analysis. ........................................................52

I. The panel can preserve every defendant-specific lane without deciding unbriefed defenses in the first instance. ..............................................................53

III. Rule 15 required at least one meaningful opportunity to cure an identified pleading defect, and the compressed proxy response was not Appellants' best case. ..................................................................................................................58

A. Rule 15 favored a post-notice opportunity to cure each identified pleading defect. ..........................................................................................................58

B. The seven-day proxy response was not a best-case election. .........................59

C. Appellants identified targeted amendments, and the categorical futility ruling supplied no substantial reason to deny them. ...................................................60

IV. The blanket judgment and Rule 59(e) denial should be vacated; at minimum, Count VI requires remand for ordinary adjudication. ..........................................62

A. *Branch Consultants* and *Thompson* support remand because the County lane never received County-specific motion practice or a ruling on a County motion. ..........................................................................................................62

B. The judgment's express without-prejudice limit prevents enlargement on appeal. .......................................................................................................64

C. The Rule 59(e) denial must be vacated because the timely motion identified the preserved procedural errors and requested claim-specific correction and targeted amendment. .........................................................................66

D. Vacatur restores each preserved claim for claim-specific adjudication; at minimum, Count VI must be remanded............................................................67

Conclusion .........................................................................................................68

Signatures...........................................................................................................69

Certificate of Service .........................................................................................70

Certificate of Compliance ..................................................................................70

## Table of Authorities

**Cases**

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) ........................................46
*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253 (9th Cir. 2010) ................ 27, 28
*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)........................................42
*Arnone v. Cnty. of Dall. Cnty.*, 29 F.4th 262 (5th Cir. 2022) ..................................36
*Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994) (per curiam) ................................64
*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383 (5th Cir. 2024) ........................................................................59
*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) .......................................... 32, 46
*Bonny v. Soc'y of Lloyd's*, 3 F.3d 156 (7th Cir. 1993) .................................... 20, 27
*Brown v. Taylor*, 829 F.3d 365 (5th Cir. 2016) ............................................ 60, 61
*Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341 (5th Cir. 2025)............ 24, 66
*Calhoun v. Collier*, 78 F.4th 846 (5th Cir. 2023) ...................................... 58, 61, 67
*Campbell v. Wilder*, 487 S.W.3d 146 (Tex. 2016) .............................. 16, 35, 36, 41
*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)........................................46
*Carver v. Atwood*, 18 F.4th 494 (5th Cir. 2021)........................................ 59, 60, 61
*CH Offshore, Ltd. v. Mexiship Ocean CCC S.A. de C.V.*, 163 F.4th 171 (5th Cir. 2025) ..........................................................................................60
*Christopher v. Harbury*, 536 U.S. 403 (2002)........................................................39
*Clark v. Sweeney*, 607 U.S. 7 (2025) .....................................................................25
*Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001)...................................................... 33, 42
*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001).................. 29, 30
*Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 876 F.3d 119 (5th Cir. 2017) ..............................................................................64
*Crane v. City of Arlington*, 50 F.4th 453 (5th Cir. 2022) .......................................24
*Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (en banc) ...............................45
*Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307 (5th Cir. 2014)................. 29, 30
*Deakins v. Monaghan*, 484 U.S. 193 (1988) ............................................ 38, 39, 68
*Elec. Reliability Council of Tex., Inc. v. Just Energy Tex., L.P.*, 57 F.4th 241 (5th Cir. 2023)...........................................................................................24

*English v. Crochet*, 154 F.4th 369 (5th Cir. 2025) .................................... 32, 38, 43
*EnvTech, Inc. v. DeBusk*, 178 F.4th 208 (5th Cir. 2026).........................................36
*Ex parte Young*, 209 U.S. 123 (1908)............................................................ 32, 43
*Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Injury, L.L.C.*, 168 F.4th 271 (5th Cir. 2026).............................................................................61
*Forrester v. White*, 484 U.S. 219 (1988) .................................................. 33, 51, 52
*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) .............................................................................................. 58, 59
*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016)..........................................36
*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023)....................................................23
*Guida v. Cass Cnty., Neb.*, No. 25-2470 (8th Cir. Aug. 20, 2026)..........................65
*Harrison v. Young*, 48 F.4th 331 (5th Cir. 2022) ....................................................37
*Hicks v. Oklahoma*, 447 U.S. 343 (1980) ........................................................ 49, 50
*Jennings v. Stephens*, 574 U.S. 271 (2015) ..................................................... 64, 65
*Jimenez v. Guerrero*, 133 F.4th 483 (5th Cir. 2025) ..............................................46
*Jones v. City of Dall., Tex.*, No. 24-10803, 2025 WL 2491127 (5th Cir. Aug. 29, 2025) (per curiam) (unpublished)......................................................... 29, 30
*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) ....................................................40
*L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521 (5th Cir. 2021)............ 24, 27
*La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025) ......................................................................................... 32, 43, 44, 51
*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)..........................................37
*Lowery v. Mills*, 157 F.4th 729 (5th Cir. 2025) .......................................................40
*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ...............................................42
*Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998) ...............................................29
*Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339 (2026) (per curiam) .....25
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)..................................... *passim*
*Owen v. City of Independence*, 445 U.S. 622 (1980) ..............................................38
*Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018) .....................................................42
*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024) ....................................... 33, 44, 46
*Ridgely v. FEMA*, 512 F.3d 727 (5th Cir. 2008).....................................................37
*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).........................................................38

*Santander v. Salazar*, 133 F.4th 471 (5th Cir. 2025)....31
*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc) .... 43, 53
*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013).... 32, 38, 45
*Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719 (1980) ....50
*Taylor v. Acxiom Corp.*, 612 F.3d 325 (5th Cir. 2010).... 20, 22, 26
*Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586 (5th Cir. 2016) .... 25, 60, 61
*Thompson v. McGehee*, 183 F.4th 353 (5th Cir. 2026) .... 35, 62, 63
*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017)....32
*Tumey v. Ohio*, 273 U.S. 510 (1927) ....46
*United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009) .... 62, 63
*United States v. Johnson-Ellis*, No. 20-50833, 2022 WL 3136978 (5th Cir. Aug. 5, 2022) (per curiam) (unpublished)....65
*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ....25
*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).... 32, 33
*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019)....39
*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)....50
*Woodard v. Andrus*, 419 F.3d 348 (5th Cir. 2005) .... 36, 37, 49
*Younger v. Harris*, 401 U.S. 37 (1971).... *passim*

**Statutes**

28 U.S.C. § 1291 ....11
28 U.S.C. § 1331 ....11
42 U.S.C. § 1983.... *passim*
Tex. Const. art. V, §§ 1, 8, 31(a) ....50
Tex. Gov't Code ch. 74 .... 51, 55

**Rules**

5th Cir. R. 25.2.10....69

Fed. R. App. P. 28(i) .......... 13, 69
Fed. R. App. P. 4(a)(4)(A)(iv) .......... 11
Fed. R. Civ. P. 12 .......... *passim*
Fed. R. Civ. P. 15 .......... *passim*
Fed. R. Civ. P. 4(m) .......... 52
Fed. R. Civ. P. 58 .......... 21, 65
Fed. R. Civ. P. 59(e) .......... *passim*
Fed. R. Civ. P. 6(b) .......... 24, 27, 28
Fed. R. Civ. P. 61 .......... 24, 31
Fed. R. Civ. P. 7(a) .......... 53
Fed. R. Civ. P. 8 .......... 36
N.D. Tex. Civ. R. 7.1(e)-(f) .......... 19, 27, 28
Tex. R. Civ. P. 145 .......... *passim*

**Other Authorities**

Tex. Sup. Ct. Misc. Docket No. 21-9077 (July 9, 2021) .......... 34

## Jurisdictional Statement

The FAC asserted claims under 42 U.S.C. § 1983 and the Fourteenth Amendment, establishing district-court jurisdiction under 28 U.S.C. § 1331. ROA.267-286. The court entered judgment on March 11, 2026. ROA.913-914. Appellants timely moved under Rule 59(e) on April 8; the court denied relief on June 12. ROA.917-943. All four filed a signed notice of appeal on June 28. ROA.944-945. This Court has jurisdiction under 28 U.S.C. § 1291, and Rule 4(a)(4)(A)(iv) made the notice timely.

## Issues Presented

**Issue 1.** Whether the district court reversibly erred by adopting a case-wide FCR based on a **global-proxy** theory after the magistrate judge **reduced** Appellants' response period from 21 days to **seven**, ordered them to respond to Wheless's motion "**as if** all defendants made similar arguments for dismissal," denied their timely extension motion, and recommended dismissal of **every** claim against **every** defendant **before** briefing closed on Roach's separately filed motion.

**Issue 2.** Whether those errors were harmful at least as to Count VI because the FAC alleged that Tarrant County maintained or ratified a **two-tier** filing **regime** that **exempted** Moss and other court-affiliated **contestants** from requirements enforced against ordinary litigants, while **Wheless's** motion **neither** addressed the County-specific questions of policy, policymaker attribution, and causation **nor** presented any municipal **defense** on the **County's behalf**.

**Issue 3**. Whether the district court reversibly erred by **denying** leave to amend and treating the FAC as Appellants' best case, where the court first **identified** the dispositive pleading **defects** in the FCR, the seven-day proxy response to Wheless's motion did **not** constitute a knowing election to stand on the FAC after claim-specific notice, and Appellants argued for an opportunity to cure in their objections and expressly requested claim-targeted amendment after judgment.

**Statement Regarding Joint Pro Se Presentation and Claim-Specific Adoption**

Under Federal Rule of Appellate Procedure 28(i), all four Appellants jointly submit this brief, but each appears only pro se, conducts only that Appellant's own appeal, and adopts arguments only as to that Appellant's own claims. All four adopt Sections I, II.A, II.I, III, and IV on that limited basis and jointly contend that their materially different claims were not interchangeable.

Randles adopts Counts I through IV as applied to his proceedings and exclusively adopts Count V. Ross adopts Counts I through IV as applied to her proceedings. Tuter adopts Counts I through IV as applied to his proceedings. Yan adopts Counts I through IV as applied to his proceedings and exclusively adopts Counts VI and VII. Thus, Sections II.B through II.D and all Count VI and VII applications are Yan's; Sections II.E and II.F are Tuter's; Section II.G is adopted by each only for that Appellant's own branch; and Section II.H is Randles's. ROA.267-286.

Brown and Dean concern Ross; Wheless, Roach, and Cooks concern Tuter; and Harris concerns Randles and Yan. ROA.233-239, 253-260, 267-279. Wilder, Grimaldi, Moss, Terry, and Tarrant County concern Yan. ROA.243-250, 280-286. Evans's individual-capacity Count V concerns Randles. ROA.278-279. Catterton and Evans in his official capacity concern Randles and Yan, while Blacklock concerns all four Appellants' prospective administrative claims. ROA.227-250,

262-279. No Appellant purports to represent another, and each has personally reviewed, approved, and signed this brief.

## Statement of the Case

### A. The action challenges distinct procedures preceding the injuries, not the merits of state judgments.

This § 1983 action concerns the procedures that preceded the exercise of adjudicative authority, not the correctness of the resulting state-court judgments. Constitutions, statutes, procedural rules, and governing administrative orders define the procedural lane through which a case advances. The FAC alleged that officials departed from assignment-notice, objection, conflict-disclosure, and Rule 145 procedures before concrete liberty, court-access, and financial injuries occurred. ROA.227-250, 260-286. The common subject was court administration, but the alleged actors, functions, proceedings, capacities, injuries, and remedies were different.

**Randles.** Catterton allegedly signed a June 4, 2025 ex parte contempt commitment without a hearing or any assignment order issued, filed, served, or docketed, although no record showed the elected judge absent, disabled, recused, or disqualified; Randles was jailed through June 6. Evans allegedly gave no timely written notice of Catterton's retired-senior status, preventing a pre-act Section 74.053 objection. A later informal notice of Harris's assignment omitted the objection right and deadline, prior assignment history, and Harris's alleged referral-

dependent mediation business; the FAC also alleged that Catterton maintained a for-profit mediation business. Randles's requests to Evans and OCA allegedly produced no assignment records. FAC ¶¶ 47-54, 106, 116, 124-127; ROA.233-235, 253-259.

**Ross.** Dean allegedly signed an August 1, 2023 final order and later orders, including a May 2024 criminal-contempt order that resulted in Ross's incarceration, before Ross received timely assignment notice or learned of her objection right; her first written notice came on December 3, 2025. Dean also allegedly acted in an August 28, 2023 DFPS matter without a filed assignment order while maintaining fee-generating mediation and ADR work. The FAC attributed the Eleventh Region's assignment, notice, eligibility-list, and conflict-screening practices to Brown and alleged that Brown assigned or allowed Dean to act without the documentation and disclosures needed for a timely Section 74.053 objection. FAC ¶¶ 55-58, 109, 112-118; ROA.235-237, 254-256.

**Tuter.** Tuter and the opposing party each paid Laura Roach $1,400 to mediate their case. Wheless allegedly knew that relationship before John Roach, Laura Roach's spouse, was assigned under Wheless's administrative oversight, yet no disclosure, recusal, or conflict screening occurred. Roach later held Tuter in criminal contempt and caused his confinement from September 17 through October 8, 2024. After Tuter moved to recuse both Roach and Wheless, Wheless

assigned Cooks; Tuter received notice at 9:29 a.m. on December 12 and filed his first Section 74.053 objection at 3:21 p.m. that day. Without giving hearing notice, Cooks allegedly proceeded, denied both recusal requests, and did not serve the signed order. The FAC further alleged that Cooks lacked authority to decide Wheless's recusal and that proceeding despite the objection exhausted Tuter's only absolute strike while Roach remained assigned. FAC ¶¶ 59-66, 107-108; ROA.237-239, 253-254.

**Yan - Rule 145.** After Yan filed a Rule 145 Statement of Inability to Afford Payment of Court Costs, Turner, acting for Wilder's District Clerk's Office, allegedly accepted and filed Moss's contest on his behalf without the ordinary fee, e-filing, service, conference-certificate, and sworn-evidence procedures. Grimaldi allegedly transmitted only a partial composite instrument bearing her signature and an illegible handwritten hearing date, without a file stamp, e-filing confirmation, service certificate, or judge-signed setting. After Yan asked Grimaldi on November 5 to clarify the date and provide the filed contest, she allegedly never responded. Catterton proceeded in Yan's absence on November 6, and the denial filed November 12 removed Yan's cost protection. The FAC also alleged that Moss knowingly used the staff-endorsed mechanism and had obtained similar fee-free treatment since at least 2019; *Campbell* gave Wilder and the County actual notice; Wilder later directed office-driven proxy contests and used public legal resources;

and the County maintained the unequal processing custom. Yan alleged ensuing costs and dismissal of an appeal when he could not pay. FAC ¶¶ 67-83, 95-100, 203-223; ROA.239-245, 249-250, 279-286.

**Yan - assignment authority.** No written Chapter 74 order authorizing Catterton was allegedly filed, docketed, or served before November 6, while Terry remained the elected judge and no record showed her absent, disabled, recused, or disqualified. Grimaldi requested Catterton on January 13, 2025 and allegedly mischaracterized the appellate court's instruction, but Evans's resulting order bore a January 9 date, four days before the request, creating the pleaded backdating discrepancy and still not explaining authority for November 6. Yan received notice on February 6, objected on February 11, and Catterton denied and referred the objection to Evans; Yan alleged that Evans never issued a written disposition and that Terry, Grimaldi, and Evans did not produce the requested assignment records. These allegations supported Yan's Counts I-IV assignment lane, not an expansion of Count VI. FAC ¶¶ 84-94, 124, 128-129, 171-179; ROA.245-248, 258-259, 271-274.

**Yan - Harris assignment and sanctions.** Evans allegedly assigned Harris on July 25, 2025. The FAC alleged that Harris maintained an active Tarrant County mediation business dependent on attorney referrals; Yan understood that opposing counsel had been and likely would remain Harris's client and that Harris was a

longtime friend of a defendant in Yan's separate federal RICO action. Yan filed a verified objection and recusal request on October 6 and sought discovery. Evans allegedly denied discovery, directed opposing counsel to seek sanctions, and selected Wallace to hear the recusal; an October 24 assignment order preceded Wallace's sanctions hearing and an approximately $6,000 attorney-fee sanction. The FAC pleaded this sequence as completed chilling and economic injury and as continuing support for Yan's prospective conflict, assignment, and objection claims. FAC ¶¶ 102-106, 149; ROA.250-253.

**Claims and relief.** The FAC kept those lanes separate. Counts I through IV sought prospective relief concerning assignment, notice, objection, records, and conflict procedures. Count V sought individual-capacity damages from Evans for Randles. Counts VI and VII attributed Yan's Rule 145, court-access, and petitioning injuries to Wilder, Grimaldi, Moss, and Tarrant County. Yan's separate Terry-Grimaldi-Catterton-Evans assignment chronology supported Counts I-IV; it did not add Terry, Catterton, or Evans to Count VI. ROA.267-286. The requested relief did not depend on treating every Appellant, defendant, or state proceeding as interchangeable.

### B. The court compressed the response period while expanding one motion across every defendant.

The federal action itself followed a separate procedural course. The action was filed on December 17, 2025, and the four-Appellant FAC followed on January 9,

2026, before any dismissal motion identified a claimed pleading defect. ROA.14, 219. Wheless filed the first dismissal motion on February 4. ROA.563-576. The governing local rule allowed 21 days to respond, and ECF No. 17 set February 25 as the deadline. N.D. Tex. Civ. R. 7.1(e); ROA.7. Later that day, ECF No. 18 vacated the order, advanced the deadline to February 12, stating only that expedited briefing was necessary, and directed Appellants to respond to ECF No. 15 "as if all defendants made similar arguments for dismissal." ROA.577-578.

Appellants sought an extension on February 9. ROA.579-582. The court denied it on February 10 and retained February 12. ROA.589.

Roach filed his **separate** motion on **February 11**. Under the same 21-day rule, Tuter's regular response deadline was March 4. Tuter instead filed a protective response on February 12, which made Roach's ordinary reply due **February 26**. N.D. Tex. Civ. R. 7.1(e)-(f); ROA.9-10. The FCR issued on **February 18**, **eight** days **before** that reply deadline. It recommended granting Wheless's motion, abstaining, and dismissing every claim against every defendant **without** prejudice. ROA.684-703. Roach filed his reply on February 20, **after** the recommendation had issued. ROA.10. Additional defendant-specific motions followed from **February 23** through **March 5**. ROA.10-11.

**C. The objections preserved that formal notice did not cure the claim-specific mismatch.**

Formal notice did not cure the substantive mismatch. ECF No. 18 announced that Appellants must answer Wheless's motion **as if** every defendant had made similar arguments. ROA.577-578. The FCR later supplied its **own** standing, *Younger*, immunity, *Monell*, and futility reasoning. ROA.684-703. Neither filing identified a common legal predicate that made the different claims, defendants, functions, capacities, and remedies interchangeable.

Appellants objected before judgment and then filed targeted responses addressing Chapter 74, Count VI, and Count I by defendant and claim. ROA.799-827, 844-912. They challenged the seven-day proxy procedure, explained why *Taylor* and *Bonny* did **not** fit materially different allegations, identified the claim-specific standing and *Younger* issues, separated personal immunity from municipal liability, and opposed the categorical futility ruling. ROA.803-806, 811-826, 872-893.

Appellants do not concede the merits of any defendant-specific defense not decided below. A movant's filing preserved only its own asserted grounds for possible alternative affirmance within the existing judgment; the mootness rulings adjudicated none of them and did not transfer them to nonmovants. The claims, capacities, remedies, and alternative Rule 15 request developed in Sections II.B-II.I and IV.D are not abandoned. Appellants' objections preserved the proxy error

because Wheless's motion and ECF No. 18 did not identify the separate grounds later applied globally, and the objections mapped that mismatch by claim and defendant. ROA.799-827, 844-912. The later responses preserved opposition, but no later motion produced a first-instance ruling.

**D. The adoption order granted ECF No. 15 but the Rule 58 judgment dismissed the entire action.**

On March 11, the district judge accepted the FCR as the findings and conclusions of the court. The order granted "Defendant's Motion to Dismiss (ECF No. 15)," dismissed all claims against all defendants **without** prejudice, and denied ECF Nos. 42, 44, 46, 50, 52, and 56 as moot. It did not identify Roach's ECF No. 25 or Grimaldi's ECF No. 48. ROA.913.

> "*Plaintiffs' claims against all Defendants are DISMISSED WITHOUT PREJUDICE*." ROA.914.

That sentence is the judgment under review. The FCR announced general conclusions about standing, *Younger*, immunity, municipal liability, and futility, but it did not apply those doctrines to each plaintiff, defendant, challenged function, capacity, and remedy. ROA.690-703. Its asserted commonality rationale did not identify a County-specific legal predicate showing why Wheless's personal and judicial-function defenses could adjudicate Yan's distinct municipal claim. Tarrant County was served on March 24, **after** judgment. ROA.915-916. That chronology confirms the absence of County-specific adversarial testing.

**E. Rule 59(e) gave the district court a direct opportunity to correct the judgment.**

The timely Rule 59(e) motion placed the exact problem before the district court. It asked the court to vacate ECF Nos. 61 and 62, reject ECF No. 15 as a case-wide dismissal vehicle, restore the action, and require separate treatment of each plaintiff, claim, and defendant. It identified the omitted ECF Nos. 25 and 48, the distinct Rule 145 and Tuter/Roach claims, *Taylor*'s same-allegations condition, and targeted amendment as fallback relief. ROA.920-942. The district court denied the motion in one sentence and ordered the case to remain closed. ROA.943.

## Summary of the Argument

Four Appellants alleged distinct assignment-notice, objection, conflict-disclosure, and Rule 145 failures causing confinement, court-access, and financial injuries. ROA.227-250, 267-286. The district court nevertheless treated Wheless's motion as a case-wide proxy, cut response time from 21 days to seven, denied an extension, and issued the FCR before Roach's separate briefing cycle closed. ROA.7, 577-582, 589-604, 684-711. The judgment dismissed every claim against every defendant. ROA.913-914.

Party presentation permits decision on a genuinely shared ground after fair notice; it does not make one movant's defenses every nonmovant's defenses. These Appellants alleged different injuries against different actors, and the asserted grounds depended on different functions, capacities, proceedings, remedies, and

dismissal consequences. The court therefore had to adjudicate the case the parties presented.

Count VI independently defeats harmlessness. Wheless limited his motion to allegations concerning Tuter, ROA.567, while Count VI alleges that Tarrant County maintained or ratified a favored-filer exception for Moss and other court-affiliated contestants. It identifies clerk-side fee, docketing, proof, service, and notice practices; prior incidents and notice; Wilder's function-specific policymaking role; and causation of costs and loss of Yan's appeal. ROA.243-250, 280-283. Wheless's personal and judicial-function defenses did not adjudicate that municipal lane.

Rule 15 independently requires vacatur. The FAC preceded Wheless's motion, the proxy order, and the FCR; Appellants requested targeted cures only after the asserted defects were identified. ROA.820-826, 932-934, 940-941. Assuming arguendo, without conceding, that Count VI needs greater specificity concerning policy, policymaker, entitlement, or moving force, Rule 15 requires a targeted amendment opportunity. Full vacatur restores every preserved claim-specific lane; at minimum, Count VI requires vacatur and remand.

**Standards of Review**

The Court reviews Rule 12(b)(1) and Rule 12(b)(6) dismissals de novo. *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023). Under Rule 12(b)(6), the

Court accepts well-pleaded facts as true, views them in Appellants' favor, and asks whether the complaint states a facially plausible claim. *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022). Because the district court resolved *standing* and *immunity* on the pleadings, those dismissal grounds receive the same de novo review. Abstention is reviewed for abuse of discretion, but whether *Younger*'s requirements are satisfied is reviewed de novo. *Elec. Reliability Council of Tex., Inc. v. Just Energy Tex., L.P.*, 57 F.4th 241, 247 (5th Cir. 2023). Rule 61 permits disregard only of an error that **does not affect substantial rights**. Here, Count VI's **distinct** municipal elements and completed **injury** make the error outcome-affecting at least as to that claim.

The Court reviews the grant or denial of an extension under Rule 6(b) for abuse of discretion. *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 524 (5th Cir. 2021). The challenged timing procedure culminated in the adopted FCR and final judgment; Appellants objected to that combined procedure before adoption and renewed the error under Rule 59(e). ROA.803-806, 920-942.

The Rule 59(e) motion attacked the underlying merits ruling, so review of its denial follows the underlying de novo standard. *Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341, 344 (5th Cir. 2025). A denial of leave to amend is generally reviewed for abuse of discretion, but a ruling based solely on futility is

reviewed de novo under the Rule 12(b)(6) standard. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

## Argument

### I. The district court reversibly erred by replacing claim-specific adversarial briefing with a twice-compressed "as if" proxy process.

### A. Party presentation did not permit the court to substitute a counterfactual assumption for the grounds the parties actually presented.

Federal courts rely on the parties to frame the issues and ordinarily decide only the questions presented. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). *Clark v. Sweeney* reversed where a court supplied a claim and theory the litigant had not presented. 607 U.S. 7, 9–10 (2025) (per curiam). The Supreme Court again reversed the Fourth Circuit because it decided "a case different from the one" the party advanced and adopted its dispositive theory without giving either side an opportunity to address it. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 343 (2026) (per curiam).

Those decisions require the court to keep the dispositive theory, affected parties, and relief within the case the parties presented. ECF No. 18 did something different. It ordered Appellants to respond to Wheless's motion "as if all defendants made similar arguments for dismissal," without identifying which ground would apply to which defendant, claim, capacity, function, or remedy. ROA.577-578. Notice of that instruction did not supply the missing adversarial presentation.

That substitution changed the adjudicatory task. Wheless was sued for specified assignment and structural-conflict conduct. His motion did not address Tarrant County's municipal policy, Wilder's clerk conduct, Grimaldi's coordinator conduct, Moss's reporter conduct, Roach's spouse-mediator conflict, Evans's individual-capacity damages claim, or Brown's and Dean's Matagorda County conduct. The court substituted its "as if" premise for motions by those defendants, then used the resulting proxy response to dismiss the claims against them. ROA.227-250, 267-279, 567-576.

**B. *Taylor*'s no-prejudice rationale applies only when the material allegations and dispositive ground are the same.**

The FCR relied on *Taylor v. Acxiom Corp.*, but *Taylor*'s reason for extending dismissal is absent here. *Taylor* found "no prejudice" because "the plaintiffs make the same allegations against all defendants." 612 F.3d 325, 340 (5th Cir. 2010). Its result depended on the sameness of the material allegations and dispositive ground. No prejudice is the *Taylor* condition that the district court never tested.

The complaint here did **not** make the same allegations against all defendants. It pleaded four plaintiffs, multiple counties and proceedings, distinct pre-exercise procedures, state and municipal actors, judicial and staff functions, official and individual capacities, prospective and monetary relief, completed confinement, and Rule 145 injuries. ROA.227-250, 260-300. A general resemblance at the level of court-related conduct cannot satisfy *Taylor*. Otherwise, any motion by any judicial

defendant would become a motion for every judge, employee, county, capacity, claim, and remedy.

*Bonny* does not cure that mismatch. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160–62 (7th Cir. 1993). Its integrally related forum-selection questions did **not** make personal immunities, enforcement connections, municipal-policy elements, and defendant-specific conduct interchangeable. A loosely shared connection to state litigation did **not** supply a dispositive ground for every claim.

**C. The seven-day universal-proxy deadline and premature FCR abused the court's briefing discretion.**

The first compression replaced an ordinary 21-day response period with seven days. ECF No. 17 set February 25, the deadline supplied by Local Rule 7.1(e). ECF No. 18 then advanced the deadline to February 12 while requiring Appellants to respond to Wheless's motion "as if all defendants made similar arguments for dismissal." ROA.7, 577-578. Appellants moved before that shortened deadline for additional time. The February 10 order gave only a conclusory reference to the issues of law and the prior expedited-briefing finding; it made no finding of delay, bad faith, prejudice to defendants, prior extensions, or docket emergency. ROA.579-582, 589. Rule 6(b) rulings are reviewed for abuse of discretion. *L.A. Pub. Ins. Adjusters*, 17 F.4th at 524. Persuasively, *Ahanchian v. Xenon Pictures, Inc.* reversed the denial of a timely Rule 6(b)(1)(A) request where an eight-day dispositive-response period, demonstrated good cause, and the absence of bad faith

or prejudice made refusal unreasonable. 624 F.3d 1253, 1258–61 (9th Cir. 2010). Here, the response period was seven days and the court simultaneously multiplied the response across every defendant.

The second compression occurred when the FCR converted an unfinished, defendant-specific cycle into a case-wide recommendation. Roach filed a distinct motion on February 11. Local Rule 7.1(e) supplied a March 4 response date. Tuter filed a protective response the next day, and the ordinary reply date was February 26. N.D. Tex. Civ. R. 7.1(e)-(f); ROA.9-10. The FCR issued February 18, before either ordinary date and before Roach filed his February 20 reply. ROA.10, 684-703. The early filing did not make Roach's spouse-mediator issues duplicates of Wheless's motion or convert the unfinished cycle into informed case-wide consent.

The combined sequence, not a freestanding entitlement to every optional reply, establishes the abuse and prejudice. The court shortened the time by two-thirds, enlarged one motion to fourteen defendants and seven counts, denied a timely extension, and issued a dispositive recommendation before ordinary briefing on the first distinct motion had closed. Meanwhile, Yan's Rule 145 claims required analysis of clerk-side contest processing, municipal policy, completed costs, and appellate injury; Tarrant County had not been served before judgment. ROA.280-293, 869-894, 915-916. No efficiency interest identified in the orders

justified deciding those different claims through a seven-day hypothetical response.

**D. Formal notice and protective filings did not supply the missing claim-specific adversarial process or erase prejudice.**

*Davoodi v. Austin Independent School District* vacated a sua sponte dismissal where the defendant's partial motion expressly left one claim outside its requested relief. The court explained that sua sponte dismissal is permissible **only** when “the procedure employed is fair,” and fairness ordinarily requires notice and an opportunity to respond. 755 F.3d 307, 310–11 (5th Cir. 2014). *Coghlan v. Wellcraft Marine Corp.* likewise rejected a Rule 12 disposition that went “well beyond the scope” of the motion before the court. 240 F.3d 449, 452–53 (5th Cir. 2001). In this case, the court issued a case-wide Rule 12 disposition **while** Roach’s separate motion was pending but before its ordinary briefing cycle closed or any later defendant-specific motion had produced a claim-specific ruling.

*Jones v. City of Dallas*, No. 24-10803, 2025 WL 2491127, at *6 (5th Cir. Aug. 29, 2025) (per curiam) (unpublished), does not cure that defect. It applied *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998). There, the magistrate judge’s report itself identified the precise sua sponte exhaustion issue, and the Fifth Circuit treated the report as notice because the plaintiff could file a specific objection. Here, ECF No. 18 identified no claim-specific standing, *Younger*, immunity, *Monell*, or futility ground, and the later FCR did not turn Wheless’s

personal defenses into County-specific _Monell_ advocacy. Appellants specifically objected to that mismatch. ROA.803-806, 872-893. _Jones_ addresses notice of a specific ground; it does not hold that notice makes materially different grounds common or eliminates prejudice from a case-wide proxy.

Fair notice identifies the actual ground requiring a response. Generalized notice of **hypothetical** "similar arguments" is **not** claim-specific notice of the standing, _Younger_, immunity, _Monell_, and futility grounds later invoked, much less the causation and policymaker questions unique to Count VI. ROA.577-578, 684-703; *see* ROA.280-283. ECF No. 18 neither **identified** those grounds nor **mapped** any ground to a particular plaintiff, claim, defendant, function, capacity, or remedy. ROA.577-578. The FCR then supplied case-wide rationales before Roach's briefing closed. ROA.684-703. That procedure **never** supplied the claim-specific adversarial testing that _Davoodi_ and _Coghlan_ require.

Appellants' objections identified that mismatch in detail. ROA.799-827, 844-912. The final order nevertheless adopted the FCR, granted only ECF No. 15, mooted six later motions, omitted two others, and entered the same case-wide judgment. ROA.913-914. The injury is the judgment's lack of a legally sufficient basis for each dismissed claim, not the absence of a point-by-point opinion.

Appellants' protective responses did not moot the challenge. They do not seek more time on an expired deadline; they seek vacatur of the judgment produced by

the compressed procedure. Compliance preserved Appellants' opposition; it did not concede adequate time, represent that Appellants had presented their best case, or erase prejudice. Their objections challenged the seven-day proxy procedure, the denial of additional time, and the FCR's use of that procedure to dismiss nonidentical claims. ROA.803-806. The Rule 59(e) motion again challenged the proxy order, the FCR's timing and scope, the unadjudicated motions, and the resulting blanket judgment. ROA.920-942. Review therefore concerns the district court's adoption of an unfair dispositive process, not an isolated scheduling disagreement.

## II. Count VI alone establishes harmful error because the County policy claim required its own Rule 12 and ***Monell*** analysis.

Rule 61 asks whether the procedure affected substantial rights, not whether every claim presents the same error. One noninterchangeable claim is enough to establish harmful error as to that claim and require at least partial vacatur. Count VI required analysis of Tarrant County's alleged policy or custom, function-specific County attribution, an underlying federal deprivation, and moving-force causation. Wheless's personal and judicial-function defenses did not answer those questions. The Court may therefore remand Count VI without deciding whether every remaining claim independently defeats harmlessness.

*Santander v. Salazar*, 133 F.4th 471, 474–83 (5th Cir. 2025) confirms that a blanket pleading error cannot be declared harmless in gross. After identifying the

wrong pleading methodology, this Court separately tested each claim under the proper Rule 12 standard, reversing one dismissal and affirming two.

**A. Threshold doctrines required separate application to each claim, defendant, function, capacity, and remedy.**

Standing is not dispensed in gross. A plaintiff must establish it for each claim and form of relief. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). A damages claim based on completed injury does not require the imminent future injury required for an injunction. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021). And a neutral adjudicator ordinarily is not adverse merely because the adjudicator may rule on a claim. *Bauer v. Texas*, 341 F.3d 352, 359–61 (5th Cir. 2003). The court **had to identify** who caused which injury and who could supply which remedy.

The same matching requirement governs the other defenses. *Ex parte Young* requires an official- and provision-specific enforcement connection. *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 263–75 (5th Cir. 2025). *Younger* begins with *Sprint*'s three exceptional categories and asks whether the requested relief would interfere with a qualifying proceeding. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–82 (2013); *Younger v. Harris*, 401 U.S. 37 (1971). *Rooker-Feldman* asks whether the state judgment itself caused the federal injury. *English v. Crochet*, 154 F.4th 369, 373–75 (5th Cir. 2025). None of those inquiries can be performed for four plaintiffs and fourteen defendants through labels alone.

Immunity is equally function specific. *Forrester v. White*, 484 U.S. 219, 224, 227–29 (1988). *Reule v. Jackson* prevents **relabeling adjudication as administration**, but it also requires **identifying the challenged role** before deciding adversity and immunity. 114 F.4th 360, 368–72 (5th Cir. 2024). Quasi-judicial immunity depends on whether the employee carried out a judicial order. *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). The FCR stated those doctrines generally but did not connect them to each act, capacity, and remedy. ROA.690-703.

### B. Count VI pleads a County policy exception for Moss, and that single noninterchangeable lane independently requires remand.

Count VI seeks compensatory and nominal damages from Tarrant County for completed injury. It alleges that the County's Rule 145 mechanism imposed costs and contributed to loss of Yan's appeal after the clerk's office advanced Moss's contest through a favored-filer exception. FAC ¶¶ 203-213; ROA.280-283. Standing is not dependent on an imminent future hearing. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021). More important for harmlessness, County policy, County attribution, and moving-force causation could not be resolved through Wheless's standing or immunity defenses. If Count VI required a different Rule 12 analysis, the proxy procedure changed the disposition of that claim.

The federal predicate is not a free-floating right to perfect state procedure. The historical Rule 145 in effect in 2024 supplied the asserted benefit: a sworn Statement of Inability to Afford Payment of Court Costs entitled the declarant to ordinary court services unless a clerk or court reporter filed a motion containing sworn evidence that the statement was materially false or no longer true, followed by notice and a hearing before adverse action. Tex. R. Civ. P. 145(c), (e), (f). The Texas Supreme Court's Comment to the 2016 Change, reproduced with the 2021 amendments, explains that the sworn statement alone requires the clerk to provide ordinary services without payment and that a clerk or party may not challenge it without sworn evidence. Tex. R. Civ. P. 145 cmt. to 2016 change; Final Approval of Amendments to Texas Rules of Civil Procedure 145, 502.3, and 506.4, Misc. Docket No. 21-9077, at 5–6 (Tex. July 9, 2021).

The FAC pleads both the ordinary baseline and the opposite exception. OCA-published schedules allegedly supplied the ordinary third-party filing-fee baseline, while Rule 145 supplied the sworn-proof, service, notice, and hearing safeguards. FAC ¶¶ 69-70, 76-80; ROA.243-246. Tarrant County allegedly applied an opposite operating rule to Moss: the clerk's office initiated or accepted his contest, charged no fee, facilitated service, and advanced an unsworn composite filing with only nine days' notice and an illegible hearing date, while ordinary litigants faced the normal fee, proof, filing, and service rules. FAC ¶¶ 69-80, 204, 207-210;

ROA.243-246, 279-282. The zero-fee treatment is not the federal violation standing alone. It is a concrete marker of the alleged **two-tier mechanism** that terminated Yan's Rule 145 benefit without the prescribed proof and notice.

The alleged exception is pleaded as a County rule of decision, not an isolated clerical mistake. The FAC alleges a practice dating to at least 2019, another fee-free Moss contest, the *Campbell* litigation and a July 2023 settlement as notice to Wilder and the County, two later office-driven proxy contests, and Wilder's maintenance or ratification of the same clerk-side mechanism. FAC ¶¶ 76, 81-82, 95-99, 207-212; ROA.243-250, 281-283. An exception deliberately reserved for favored court-affiliated filers is the alleged policy: ordinary rules for the public, an opposite path for Moss and similarly favored contestants.

Those allegations satisfy the pleading function of *Monell*. Municipal liability requires an official policy or persistent custom, attributable to a municipal policymaker, that is the moving force behind a federal violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). *Thompson v. McGehee* requires specific policy or custom facts, official notice or ratification, and moving-force causation rather than labels or respondeat superior. 183 F.4th 353, 375–80 (5th Cir. 2026). Count VI identifies the alleged two-tier rule, repeated incidents, notice, ratification, and the direct causal sequence. FAC ¶¶ 76, 81-82, 95-99, 207-212; ROA.243-250,

281-283. At Rule 12, those pleaded facts must be accepted and tested against County-specific grounds.

*EnvTech, Inc. v. DeBusk*, 178 F.4th 208, 221–22 (5th Cir. 2026) confirms that a competing benign explanation does not defeat a plausible inference at Rule 12 merely because the court finds the competing explanation equally persuasive. Rule 8 does not require Appellants' policy inference to be more compelling than a competing inference.

Policymaker attribution is function specific. The FAC pleads District Clerk Wilder as the relevant final policymaker for the office's fee assessment, docketing, filing, service, and Rule 145 administration. FAC ¶¶ 207-210; ROA.281-282. *Groden v. City of Dallas* holds that a complaint need not conclusively identify the final policymaker because that identity is a legal question resolved from state and local law. 826 F.3d 280, 284–86 (5th Cir. 2016). *Arnone v. County of Dallas County* directs courts to examine state law and the precise function that produced the alleged injury when an official may wear more than one governmental hat. 29 F.4th 262, 266–68 (5th Cir. 2022). *Campbell v. Wilder* does not decide federal *Monell* attribution, but it confirms that Tarrant County's district clerk had a continuing, clerk-side Rule 145 cost-collection policy capable of distinct judicial review. 487 S.W.3d 146, 149–52 (Tex. 2016). The FCR did not perform the required function-specific inquiry, and Wheless's motion could not supply it.

*Woodard* confirms why that function-specific inquiry matters at Rule 12: accepting allegations that a clerk systematically charged unauthorized civil fees, the Fifth Circuit inferred a clerk-side custom or policy and treated the clerk as the policymaker for civil-fee functions. 419 F.3d 348, 353 (5th Cir. 2005). That pleading-stage inquiry cannot be supplied by Wheless's defenses.

Rule 145's cost exemption and accompanying court services constituted a protected property entitlement, not merely an interest in state procedure. Property exists when governing law creates an entitlement by imposing substantive limits on official discretion. *Ridgely v. FEMA*, 512 F.3d 727, 735–36 (5th Cir. 2008). The Fifth Circuit applies that principle to financial benefits: "Individuals have a constitutionally protected property interest in social welfare benefits when a statute entitles them to the benefits if they satisfy eligibility criteria." *Harrison v. Young*, 48 F.4th 331, 341 (5th Cir. 2022). At the Rule 12 stage, the same entitlement principle applies to the benefit alleged here: historical Rule 145 required ordinary court services upon the filing of the prescribed sworn statement and permitted withdrawal of that benefit only through the Rule's sworn-evidence, notice, hearing, and order requirements.

Count VI also pleads the federal deprivation and moving force. *Logan v. Zimmerman Brush Co.* protects an underlying **state-created entitlement** from **arbitrary termination** through the State's **own mechanism**. 455 U.S. 422, 428–

33 (1982). The FAC alleges that, but for the County's favored-filer exception, Moss's unsworn and deficient contest would not have been advanced through the clerk's office, Yan's Rule 145 benefit would not have been withdrawn through that mechanism, and the resulting costs would not have contributed to loss of his appeal. FAC ¶¶ 83, 100, 203-212; ROA.247-250, 280-283. That is an alleged direct causal chain, not respondeat superior and not a technical-fee claim.

The remaining threshold doctrines do not erase this lane. *Rooker-Feldman* is narrow and does not bar damages for injuries independently caused by defendants' conduct during state litigation. *English v. Crochet*, 154 F.4th 369, 373–75 (5th Cir. 2025). Yan challenges antecedent clerk-side acceptance, fee, proof, service, notice, and record practices; he does not ask the federal court to reverse the state indigency order. Tarrant County has neither Texas sovereign immunity nor a qualified-immunity defense to its own Section 1983 liability. *Russell v. Jones*, 49 F.4th 507, 513 (5th Cir. 2022); *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). *Younger* does not support dismissal of Count VI. Count VI seeks damages for completed, allegedly County-controlled clerk practices. Its separately requested prospective relief targets future clerk-processing practices; it does not ask the federal court to halt the pending family proceeding or reverse an existing state order. FAC ¶¶ 203-213; ROA.280-283. The FCR identified neither a qualifying *Sprint* category for Count VI nor interference with one. ROA.690-703. Assuming

arguendo, without conceding, that *Younger* reaches any cognizable damages portion of Count VI, *Deakins* requires a stay when state proceedings cannot award those damages. 484 U.S. 193, 202–03 (1988). Count VI alone therefore establishes harmful error and requires at least partial vacatur and remand. The Court need not reach the remaining claim-specific lanes to grant that relief.

The following claim-specific lanes are preserved alternatives. They confirm the breadth and prejudice of the proxy error and support judgment-wide vacatur, but Count VI remains independently sufficient for the minimum remand requested.

**C. Count VII required separate access-to-courts and retaliation analyses.**

Count VII is not a duplicate label for Count VI. It alleges that the Rule 145 and record practices obstructed Yan's appeal and that a contest followed his notice of appeal and postjudgment activity after months without a contest. FAC ¶¶ 214-223; ROA.283-286. It seeks damages for completed denial of access and retaliation, and its separately requested prospective relief is limited to future clerk-side practices rather than existing state orders or proceedings; it attributes the mechanism to Wilder, Grimaldi, Moss, and the County. FAC ¶¶ 214-223; ROA.283-286.

A backward-looking access claim requires a nonfrivolous underlying claim, official acts that frustrated the litigation, and a remedy unavailable in the lost action. *Christopher v. Harbury*, 536 U.S. 403, 415–18 (2002). *Waller v. Hanlon*

requires a concrete litigation setback rather than delay alone. 922 F.3d 590, 601–02 (5th Cir. 2019). The FAC alleges dismissal of Yan's appeal, ties it to costs and record barriers, and incorporates the constitutional challenges the appeal sought to present. FAC ¶¶ 212, 214-217; ROA.283-285. Those allegations required a Count VII application. Assuming arguendo, without conceding, that the lost appellate claim or unavailable remedy needs more detail, that is a targeted amendment issue, not case-wide futility.

Retaliation is different. An ordinary citizen must allege protected activity, an adverse act that would chill a person of ordinary firmness, and substantial motivation by the protected activity. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025). Count VII identifies Yan's notice of appeal and postjudgment motion, the ensuing contest and cost mechanism, timing, deterrent effect, and alleged differential treatment. FAC ¶¶ 218-223; ROA.285-286. Taken as true, those allegations support the motivation and personal-involvement inferences required at Rule 12. Wheless's standing and immunity arguments did not answer that retaliation claim.

**D. Yan's individual claims against Wilder, Grimaldi, and Moss require separate analysis of each role, state-action theory, causal link, and immunity.**

Municipal liability does not establish individual liability, but neither does a judicial defendant's immunity dispose of every clerk, coordinator, or reporter act. Count VI and Count VII attributed different conduct to Wilder, Grimaldi, and

Moss, and sought different relief by capacity. FAC ¶¶ 25-28, 69-83, 95-100, 203-223; ROA.227-228, 243-250, 279-286. Rule 12 therefore required each person's alleged act, function, causal contribution, state-action basis, capacity, and requested remedy to be tested separately.

Wilder's alleged involvement was not confined to Turner's single docket entry. Turner allegedly acted for his office when she accepted and filed Moss's contest in person without the ordinary fee, e-filing notice, conference certificate, service, or sworn evidence. The FAC further alleged Wilder's notice from *Campbell*; an office pattern reaching back at least to 2019; two additional DA-assisted proxy contests after Yan pursued review; use of County legal resources; and unequal cost-and-record treatment. FAC ¶¶ 69-70, 76, 81-82, 95-100, 203-213; ROA.243-250, 279-283. Those facts separately bear on Wilder's personal involvement, policymaker role, deliberate choice, causation, and the boundary among personal damages, official prospective relief, and County liability.

Grimaldi allegedly did more than transmit a filed pleading or judge-signed setting. She allegedly combined part of Moss's contest with her own handwritten date and signature, omitted ordinary filing and service indicia, knew by November 5 that Yan could not read the setting, provided no corrected notice or complete filed contest, and allowed the November 6 proceeding to occur in his absence. FAC ¶¶ 71-75, 79-80, 83, 204(3), 206, 211, 217; ROA.243-245, 280-285. The

alleged notice creation, knowledge, omission, and foreseeable contribution to Yan's absence supplied a Grimaldi-specific pre-hearing causal theory independent of whether Catterton's later ruling was correct.

Moss was pleaded as a nonparty reporter with a personal fee interest who did not use the ordinary filing, conference, service, or sworn-evidence route, but instead knowingly used the staff-endorsed composite instrument to trigger state action. The FAC also alleged another similar, fee-free Moss contest dating to at least 2019. FAC ¶¶ 69-81, 204(2), 205, 210-211, 216-217, 219, 223; ROA.243-245, 280-286. Taken as true, those facts presented a Moss-specific joint-participation and causation theory, not merely a private litigant's ordinary resort to court.

*Antoine v. Byers & Anderson, Inc.* rejects absolute immunity for court reporters performing nondiscretionary transcript functions. 508 U.S. 429, 436–37 (1993). *Clay* recognizes derivative immunity only when staff carry out a judicial order. 242 F.3d at 682. The FCR identified no order directing every acceptance, notice, fee, or reporter act alleged here. ROA.694-700. Moss's state-action status also turns on the alleged official role or joint participation under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), while any contractor qualified-immunity claim requires the fact-specific inquiry described in *Perniciaro v. Lea*, 901 F.3d 241, 251–54 (5th Cir. 2018). Those are not interchangeable grounds.

Capacity matters as well. Any request for damages from Wilder or Grimaldi in an official capacity presents a different Eleventh Amendment question from individual-capacity damages, while prospective federal relief requires the connection and ongoing-violation analysis under *Ex parte Young*, 209 U.S. 123, 159–60 (1908), and *La Union*. Assuming arguendo, without conceding, that sovereign immunity forecloses one official-capacity monetary theory, it does not reach the County, the individuals in their personal capacities, or a properly connected prospective claim. Qualified immunity likewise must be applied to each individual's alleged act and the right stated with the required specificity, with a tailored *Schultea* reply if necessary.

*English* likewise prevents treating the later state ruling as the source of every injury. If the pleaded defect was independently caused by a contest, docket, notice, or record act, *Rooker-Feldman* does not bar the claim merely because state litigation was underway. 154 F.4th at 373–75. Assuming arguendo, without conceding, that qualified immunity or state action defeats one individual-capacity theory, that result is limited to that defendant and theory; it does not decide the County claim or the other individuals' functions.

**E. Wheless's motion did not establish the same disposition even within Tuter's separate claims.**

Wheless opened by limiting his motion to himself: he said the complaint's allegations concerning him involved Tuter and "no other Plaintiffs." ROA.567. His

brief challenged Tuter's standing, Eleventh Amendment theory, requested prospective relief, and the role Wheless performed in assignment and recusal matters. ROA.568-576. Those arguments did not purport to decide Randles's claim against Evans, Ross's Matagorda County claims, Yan's County and staff claims, or Roach's separate motion.

Even as to Wheless, the operative complaint distinguished adjudication from regional assignment administration and alleged an active Tuter proceeding with expected future hearings. FAC ¶¶ 18, 23, 59-65, 155-202; ROA.226-227, 237-239, 267-279. *Reule* requires the court to classify the actual role; a title does not answer whether a challenged assignment notice or administrative directive is adjudicative, enforcement-related, or administrative. 114 F.4th at 368–72. *La Union* then requires a concrete connection between the named official, challenged provision, and prospective federal remedy. 163 F.4th at 263–75. The FCR did not perform those applications for Wheless.

The pleaded sequence made that distinction concrete. Wheless allegedly knew of Laura Roach's paid same-case mediation before John Roach's assignment, yet the regional assignment process supplied no disclosure or conflict screening. After Tuter moved to recuse Roach and Wheless, Wheless assigned Cooks; Tuter then filed his first statutory objection before Cooks proceeded, but received no hearing notice, explanation, or service of the resulting order. FAC ¶¶ 59-66, 107-108, 180-

192; ROA.237-239, 253-254, 274-277. Those allegations required separate analysis of Wheless's assignment and screening connection, Cooks's response to the objection, and Roach's later adjudicative conduct.

Wheless's *Younger* theory likewise could not operate case-wide. Family litigation by itself is not a *Sprint* category. The question is whether the particular federal request would interfere with a criminal prosecution, a qualifying civil enforcement action, or an order uniquely necessary to the state court's judicial functions. 571 U.S. at 78–82. The 2023 en banc *Daves* decision concerned federal restructuring of ongoing Texas bail processes; it did not erase *Sprint*'s category and interference inquiry. 64 F.4th 616 (5th Cir. 2023) (en banc). Assuming arguendo, without conceding, that *Younger* reaches a particular Tuter request involving a contempt mechanism, the result is confined to that proceeding, claim, and remedy.

**F. Tuter's direct same-case spouse-mediator allegation required separate treatment of Roach's role and requested relief.**

Roach filed a separate motion, and Tuter clarified that the operative claim against Roach was Tuter's alone and sought official-capacity prospective relief, not individual-capacity damages. ROA.590-604, 649-650. The FCR issued before Roach's reply, and the adoption order never identified ECF No. 25. ROA.10, 684-703, 913. A personal-immunity defense to damages therefore did not dispose of the relief Tuter said he sought.

The pleaded conflict also was not merely a generalized mediation-market theory. Tuter alleged that Judge Lindsey Wynne referred the parties to Laura Roach; each party **paid** her **$1,400**; Roach was **later assigned** to the same case; Texas community-property rules gave him a direct interest; the relationship and payment were not disclosed; and Roach continued to preside. FAC ¶¶ 59-63, 107-108; ROA.237-238, 253, 268. *Jimenez v. Guerrero* requires either an actual "direct, personal, substantial pecuniary interest" in the litigant's case or an objectively intolerable probability of actual bias. It rejected a bias claim based on payments that neither implicated the litigant's case nor depended on a particular ruling. 133 F.4th 483, 493–95 (5th Cir. 2025). Tuter's pleaded same-case payment to the presiding judge's spouse presents a different and more direct alleged nexus under *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824–25 (1986), and *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876–84 (2009).

Tuter's pleaded same-case payment alleged a direct financial nexus and a prospective presiding role that required Roach-specific analysis under *Bauer*, 341 F.3d at 359–61, *Reule*, 114 F.4th at 368–72, and the judicial-officer proviso in § 1983. Assuming arguendo, without conceding, that one of those grounds defeats one form of relief against Roach, it does not decide the claims against Wheless, Cooks, or any other defendant.

**G. The Chapter 74 claims required the court to separate administrative conduct, adjudicative conduct, and each requested remedy.**

Counts I-III alleged different assignment, notice, objection, records, and conflict events involving Blacklock, Evans, Brown, Wheless, Catterton, Harris, Dean, Cooks, Roach, Terry, and Grimaldi. Count IV separately pleaded the declaratory vehicle against Blacklock, Evans, Brown, and Wheless. ROA.227-279. The FAC also alleged that the plaintiffs' state matters remained active or would require additional hearings. FAC ¶¶ 16-19; ROA.226-227. Those allegations supplied the starting point for claim-specific standing; they did not permit treating every official as either an adverse enforcer or a neutral judge without examining the pleaded act, capacity, injury, and remedy.

The common statewide branch concerned Blacklock's alleged OCA administration, not any merits ruling. The FAC alleged that OCA published the eligibility lists used for Chapter 74 assignments, maintained or controlled assignment-record practices, did not produce requested records, lacked a statewide filed-and-docketed assignment protocol and conflict screening, and issued no corrective directive. FAC ¶¶ 124-142, 155-179; ROA.258-273. The requested relief targeted those ongoing record, notice, eligibility, and screening duties, so Blacklock's connection, function, and immunity had to be analyzed in that prospective administrative lane.

Randles's Eighth Region branch alleged that no assignment order or elected-judge unavailability preceded Catterton's June 4 contempt commitment; Evans gave no timely status notice or objection opportunity; and later notice of Harris omitted the objection right, prior assignment history, and Harris's alleged mediation conflict. FAC ¶¶ 47-54, 106, 111, 116, 124-127, 180-202; ROA.233-235, 253-259, 274-279. That chain separated Evans's assignment, notice, and records administration from Catterton's later contempt act and from Harris's prospective assigned role; Count V separately sought personal damages from Evans.

Ross's Eleventh Region branch alleged that Brown maintained the assignment, notice, eligibility-list, and conflict-screening practices through which Dean acted without timely documentation or disclosure. Dean allegedly maintained fee-generating ADR work, signed orders before Ross learned of the statutory objection, caused Ross's confinement through contempt, and acted in a DFPS matter without a filed assignment order. FAC ¶¶ 55-58, 109, 112-118, 155-179; ROA.235-237, 254-256, 267-273. Brown's antecedent administrative connection and Dean's later adjudicative acts therefore presented different standing, immunity, and remedial questions.

Tuter's First Region branch likewise separated Wheless's alleged assignment and conflict-screening role, Roach's same-case spouse-mediator conflict and later

contempt adjudication, and Cooks's decision to proceed after Tuter's first written objection. FAC ¶¶ 59-66, 107-108, 180-192; ROA.237-239, 253-254, 274-277. The morning assignment notice, afternoon objection, absence of hearing notice, denial of both recusals, and nonservice of the signed order made Cooks's conduct materially different from both Wheless's and Roach's.

Yan's assignment branch belonged to Counts I-III and the corresponding prospective declarations and injunction, not Count VI. It alleged no pre-November 6 Catterton assignment order while Terry remained available; Grimaldi's January 13 request and claimed appellate instruction; Evans's resulting order dated January 9, four days before the request; February 6 notice; Yan's February 11 objection; Catterton's denial and referral; and no written Evans disposition or production of the requested records. FAC ¶¶ 84-94, 124, 128-129, 171-179; ROA.245-248, 258-259, 271-274. The exact chronology supported the pleaded backdating inference and required separate analysis of Terry's supervision, Grimaldi's request, Evans's assignment and objection administration, and Catterton's adjudication.

A violation of Texas procedure alone does not establish § 1983 liability. *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). The federal theories pleaded here were deprivation of an impartial and lawfully constituted tribunal before confinement and deprivation of a mandatory objection entitlement, not freestanding enforcement of Chapter 74. ROA.267-279. *Hicks v. Oklahoma* holds

that arbitrary denial of a mandatory state-created entitlement may implicate due process when the entitlement affects the adjudicative result. 447 U.S. 343, 346 (1980). The FAC alleges mandatory objection rights tied to the named assignments, denial before confinement or another concrete injury, and an actor-specific causal chain. ROA.267-279. Those allegations required count-specific Rule 12 analysis; they could not be rejected through a general state-procedure label.

*Whole Woman's Health* and *Consumers Union* require function-specific classification, not treatment based on judicial title. *Whole Woman's Health* treated judges and clerks as nonadverse where they merely docketed or decided disputes brought by others. 595 U.S. 30, 39–40 (2021). *Consumers Union*, by contrast, separately analyzed the Virginia Supreme Court's protected rulemaking, traditional adjudication, and independent authority to initiate enforcement proceedings. 446 U.S. 719, 734–37 (1980). The same official may perform distinct functions, but each challenged act must be classified by what that act does.

The constitutional and statutory structure confirms the FAC's functional separation. The Texas Constitution vests judicial power in identified courts, defines district-court jurisdiction, and separately assigns judicial-branch administration to the Supreme Court. Tex. Const. art. V, §§ 1, 8, 31(a). Chapter 74 provides regional offices, records, and support staff; assigns administrative duties

to presiding judges; and gives the assigned judge trial-court powers. Tex. Gov't Code §§ 74.043(a), 74.046(a), 74.050(a)–(b), 74.059(a). The FAC did not characterize the assigned judges' later merits rulings as assignment administration. It separately attributed OCA directives and assignment-record practices to Blacklock; assignment and notice administration to Evans, Brown, and Wheless; and later adjudicative acts to the assigned judges. ROA.227-229, 255-266, 267-279. Selecting an assigned judge may involve administrative discretion. Issuing notice, transmitting or filing the assignment order, maintaining assignment records, and processing the statutory objection are antecedent administrative components. None decides a claim or defense merely because it determines who may later adjudicate. Put differently, the AJR office was pleaded as the administrator and enforcer of the Chapter 74 assignment system, rather than as the traditional tribunal adjudicating the underlying cases.

Assuming arguendo, without conceding, that legislative immunity protects Blacklock's particular rulemaking acts, or that judicial immunity protects an assigned judge's later rulings, those conclusions do not classify or dispose of the separately pleaded assignment, notice, objection, directive, and records conduct. *Forrester* requires classification by function, and *La Union* requires an official-specific connection between the challenged duty, alleged ongoing violation, and

prospective remedy. 484 U.S. 219, 227–30 (1988); 163 F.4th 239, 263–75 (5th Cir. 2025). The FCR's case-wide judicial label did not perform that act-by-act analysis.

Cooks's nonservice could not supply the March 11 judgment either. Rule 4(m) allowed ninety days after filing and required notice before a court-initiated dismissal; the certified docket shows no such notice, and judgment entered about sixty-one days after the FAC. ROA.1-13, 219, 914. That service issue therefore could not support the March 11 case-wide merits judgment.

**H. Randles's Count V individual-capacity claim against Evans required its own function and qualified-immunity analysis.**

Count V seeks damages from Evans in his individual capacity for allegedly administrative assignment, notice, and records conduct: no assignment order or elected-judge unavailability appeared before Catterton acted, Evans gave no timely notice of Catterton's assigned status, and Randles therefore had no meaningful opportunity to exercise a Chapter 74 objection before the contempt commitment and confinement. FAC ¶¶ 48-53, 116, 124-127, 200-202; ROA.233-235, 255-259, 278-279. That claim is not a municipal claim, a claim against Wheless, or a request to enjoin a neutral adjudicator.

Absolute immunity turns on function. *Forrester* denied judicial immunity for administrative employment conduct even though a judge performed it. 484 U.S. at 229–30. Qualified immunity asks whether the pleaded facts show violation of a federal right that was clearly established for the particular conduct. The FCR

grouped the individual defendants, invoked a heightened-pleading formulation, and did not identify Evans's alleged act or the right at the required level. ROA.696-700. *Schultea v. Wood* permits a Rule 7(a) reply tailored to a pleaded qualified-immunity defense; it does not convert one defendant's motion into a case-wide heightened-pleading dismissal. 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

Assuming arguendo, without conceding, that Count V needs a more precise federal-interest or clearly-established-law allegation, the consequence is limited to Randles, Evans, Count V, individual-capacity damages, and that identified defect. It does not support the judgment against other defendants or establish incurable futility.

**I. The panel can preserve every defendant-specific lane without deciding unbriefed defenses in the first instance.**

Restoration, not a first-instance merits ruling, is the requested disposition. Sections II.B-II.H develop the operative claims and why the proxy could not decide differently situated defendants. The applications below identify the plaintiff, count, capacity, challenged function, injury, and remedy that must return. A defense not decided below remains for ordinary briefing; this map does not ask the panel to validate or reject it.

**Brown.** Ross's restored lane is official-capacity prospective relief under Counts I-III, with Count IV as the pleaded declaratory vehicle. Ross alleged active matters, Dean's repeated service, and Brown's continuing regional administration

of the eligibility, assignment, notice, records, and conflict-screening practices that preceded Dean's acts. FAC ¶¶ 55-58, 112-119, 146, 151-158, 162, 180, 191-198; ROA.235-237, 254-256, 264-279. The requested prohibition runs to Brown's own regional assignment and notice administration, not Dean's adjudication. The allegations therefore supply recurrence, traceability, redressability, and the office-specific connection required for prospective relief. ROA.286-294. No individual-capacity damages theory is needed to restore that official administrative lane.

**Terry.** Yan's restored lane is official-capacity prospective relief under Counts II-III and the corresponding declarations and injunction. Yan alleged that Terry remained the elected judge when Catterton acted; Grimaldi worked under Terry's supervision; Grimaldi later requested Catterton while Terry remained available; and Terry's office lacked a written assignment-request and notice protocol. FAC ¶¶ 84-94, 102-103, 171-176, 224-230; ROA.245-251, 270-272, 286-294. A later recusal or transfer does not erase completed traceability. Prospective redressability rests on the pleaded continuing 325th District Court practice and risk that an Appellant will again encounter that practice. FAC ¶¶ 145, 148, 151; ROA.263-265. Assuming arguendo, without conceding, that the transfer requires more detail about Terry's present control, the preserved Rule 15 request calls for targeted leave, not affirmance of the case-wide judgment. The restored lane is official and prospective; it does not depend on an unpleaded Terry damages count.

**Cooks.** Tuter's restored lane is official-capacity prospective Count III relief. Tuter alleged morning notice of Cooks's assignment, his first written § 74.053 objection that afternoon, no hearing notice, Cooks's decision to proceed and deny both recusals, and nonservice of the signed order. FAC ¶¶ 62-66; ROA.238-239. Section 74.053(b) provides that, after a timely objection, the assigned judge shall not hear the case. The FAC alleged a completed loss of that protection and an active Tuter matter, and requested a declaration and a prospective prohibition against Cooks's further exercise of assigned authority after the filed objection. FAC ¶¶ 147, 184-195, 225(9), 226-229; ROA.264, 273-276, 288, 290-294. The claim seeks no damages and no appellate review of the recusal merits. Its availability must be tested against the precise requested relief and the § 1983 judicial-officer proviso; the FAC expressly alleged that declaratory relief was unavailable before the undisclosed proceeding. Cooks's separate Rule 4(m) protection also remains as stated above.

**Catterton.** Randles and Yan seek official-capacity prospective relief under Counts I-III. Count I concerns Catterton's alleged referral-dependent mediation business and the absence of conflict disclosure; Count II concerns his exercise of authority without a recorded substitution predicate or pre-act assignment order; Count III concerns notice and the objection opportunity. FAC ¶¶ 47-54, 84-94, 106, 159-195; ROA.233-235, 245-248, 253, 267-276. Both Appellants alleged

active matters, and the FAC described repeated Catterton assignments. The requested remedy bars future acceptance or exercise of assigned authority in their matters unless the pleaded filing, notice, substitution, and conflict preconditions are met. ROA.287, 291-293. It seeks neither damages from Catterton nor review of a past merits ruling. The assigned-judge standing rule, functional immunity, and the § 1983 proviso must be applied to that exact prospective lane; a judgment-wide judicial label did not do so.

**Dean.** Ross seeks official-capacity prospective Count I relief and the related Counts II-III assignment-and-notice relief. Dean allegedly maintained referral-based ADR work, entered orders before Ross learned of the objection right, caused confinement through contempt, and acted in a DFPS matter without a timely filed assignment order. Ross alleged continuing matters subject to the same regional system. FAC ¶¶ 55-58, 109, 112-118, 146, 159-195; ROA.235-237, 254, 264, 267-276. Count I addresses the alleged financial conflict; Counts II-III address authority, filing, notice, and objection prerequisites. The relief is prospective only: disclosure and satisfaction of the pleaded prerequisites before Dean again accepts or exercises assigned authority in Ross's matters. ROA.287-288, 292-293. It seeks no damages and no review of a past state judgment. Any neutral-adjudicator or immunity defense must be applied to that Dean-specific remedy, while Brown's antecedent regional administration remains a separate lane.

**Harris.** Randles and Yan seek official-capacity prospective Count I and related assignment-and-notice relief. Randles alleged that his informal Harris notice omitted the objection right and the alleged mediation conflict. Yan alleged a July 25 assignment, Harris's referral-dependent mediation business and alleged relationships with opposing counsel and another federal defendant, Yan's verified October 6 objection and discovery request, and the ensuing Evans referral-and-sanctions sequence ending in an approximately $6,000 fee sanction. FAC ¶¶ 53-54, 102-106, 145, 148-149, 159-164; ROA.234-235, 250-253, 263-269. The sequence supplies completed injury, chilling, and recurrence context. Harris-specific traceability rests on his actual assignments and alleged undisclosed business relationships; Evans's referral and sanction administration remains analytically separate. The requested Harris remedy is written conflict disclosure and resolution before any future exercise of assigned authority, not damages or review of a merits ruling. ROA.287, 292-293.

**Complete remand map.** The remaining lanes are already developed above: Blacklock's statewide OCA administration; Evans's and Wheless's regional administration; Roach's same-case spouse-mediator Count I claim; Randles's Count V against Evans individually; and Yan's Counts VI-VII against Wilder, Grimaldi, and Moss individually and Tarrant County. Grimaldi has two distinct functions: official prospective Chapter 74 request-and-notice conduct under Counts II-III, and

individual-capacity Rule 145 conduct under Counts VI-VII. ROA.267-298. Each lane returns only in the count, capacity, function, and remedy pleaded. The panel need not decide a defendant-specific alternative ground not adjudicated below; that ground and Appellants' response remain for first-instance briefing.

## III. Rule 15 required at least one meaningful opportunity to cure an identified pleading defect, and the compressed proxy response was not Appellants' best case.

The FCR called the FAC Appellants' "best case" and declared amendment futile by extending its collective standing, abstention, immunity, and *Monell* conclusions to every count. ROA.701-702. Appellants squarely objected. They identified *Monell*, personal-capacity, qualified-immunity, and claim-detail matters as curable; invoked the ordinary opportunity to cure; and requested leave as to any claim found deficient only in pleading detail. ROA.820-826. Their Rule 59(e) motion renewed a claim-targeted request after judgment. ROA.932-934, 940-941. The court denied that request in one sentence and kept the case closed. ROA.943.

### A. Rule 15 favored a post-notice opportunity to cure each identified pleading defect.

Rule 15's command is not neutral between amendment and termination. This Court describes a "bias in favor of granting leave to amend" and severely restricts a district court's discretion absent a substantial reason. *Calhoun v. Collier*, 78 F.4th 846, 854–55 (5th Cir. 2023). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.* states the ordinary practice more concretely: courts often afford at

least one opportunity to cure pleading deficiencies unless the defect is clearly incurable or the plaintiff is unwilling or unable to amend. 313 F.3d 305, 329 (5th Cir. 2002). And *Association of American Physicians & Surgeons Education Foundation v. American Board of Internal Medicine* reversed the denial of an amendment opportunity because procedure cannot "short circuit" Rule 15's liberal scheme. 103 F.4th 383, 394 (5th Cir. 2024).

The opportunity must be meaningful, which means it must follow identification of the supposed defect. The FAC was filed on January 9, 2026, before Wheless moved to dismiss, before ECF No. 18 converted his motion into a case-wide proxy, and before the FCR announced the grounds later called incurable. ROA.6-8, 577-582, 589, 701-702. An amendment filed before those grounds existed could not be the required opportunity to cure them. Nor did the compressed response supply that opportunity: the court reduced the response period from 21 days to seven, denied additional time, and required one filing to answer hypothetical defenses for all defendants. ROA.577-589.

**B. The seven-day proxy response was not a best-case election.**

The rushed proxy response also cannot support the FCR's "best case" premise. *Carver v. Atwood* applies that narrow exception where a plaintiff repeatedly represented that the complaint was adequate and refused supplementation after a dismissal challenge. 18 F.4th 494, 498 (5th Cir. 2021)

(discussing Brown v. Taylor, 829 F.3d 365, 370 (5th Cir. 2016)). Appellants made no such election. Compliance with a seven-day order preserved opposition; it did not declare the pleading complete. Their later objections and Rule 59(e) request did the opposite by asking to refine any defect after claim-specific notice. ROA.820-826, 932-934, 940-941.

**C. Appellants identified targeted amendments, and the categorical futility ruling supplied no substantial reason to deny them.**

The Count VI request was sufficiently specific. A formal motion or attached proposed complaint is not invariably required when the filing identifies the amendment's substance, a plausible basis for liability, and the requested relief. *CH Offshore, Ltd. v. Mexiship Ocean CCC S.A. de C.V.*, 163 F.4th 171, 182–84 (5th Cir. 2025); *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–92 (5th Cir. 2016). Appellants identified the County's two-tier Rule 145 policy or favored-filer exception, Wilder's clerk-side policymaking functions, repeated Moss and proxy incidents, notice and ratification, the protected benefit, and moving-force causation; they requested targeted amendment after claim-specific notice. ROA.820-824, 872-893, 940-941; *see also* ROA.243-250, 280-283. Those are proposed cures, not concessions that the operative FAC failed.

The words "without prejudice" do not answer the separate no-leave ruling. The judgment terminated this action, and ECF No. 65 kept it closed after Appellants invoked Rule 59(e) and Rule 15. ROA.914, 940, 943. *Calhoun*

therefore controls the postjudgment framework: when judgment rests on the pleadings, Rule 15 considerations govern a Rule 59(e) request to reopen and amend. 78 F.4th at 853–55. Appellants do not rely on the separate notice rule for sua sponte dismissal with prejudice discussed in *Brown* and *Carver*; they challenge the categorical futility ruling and denial of a preserved amendment request in a closed case.

*Farmers Texas County Mutual Insurance Co. v. 1st Choice Accident & Injury, L.L.C.*, 168 F.4th 271, 276–77 (5th Cir. 2026) independently confirms that a postjudgment request to amend is governed by Rule 15(a)'s considerations and its presumption in favor of amendment. A denial without adequate reasons ordinarily warrants reversal unless the record supplies an ample and obvious ground. *Id.* at 277–80. No such ground exists here: Appellants had no prior meaningful opportunity to cure a claim-specific defect, and neither the FCR nor the Rule 59(e) denial identified a County-specific defect that was incurable.

To the extent the FCR denied amendment as futile, review is de novo under Rule 12(b)(6). *Thomas*, 832 F.3d at 590. To the extent the FCR separately relied on efficiency or unnecessary delay, review is for abuse of discretion. Although the FCR invoked efficiency, unnecessary delay, and futility generally, neither the FCR nor the Rule 59(e) denial identified actual undue delay by Appellants, bad faith, prejudice, repeated failure to cure after notice, or a County-specific reason why

targeted amendment would be futile. ROA.701-702, 943. The FAC preceded Wheless's motion, the proxy order, and the FCR; Appellants requested targeted amendment after the asserted defects were disclosed. ROA.577-582, 589, 820-824, 872-893, 940-941; *see also* ROA.243-250, 280-283. Assuming arguendo, without conceding, that Count VI requires greater specificity concerning policy, policymaker attribution, the federal entitlement, or moving force, the Court should vacate the categorical denial and remand for one targeted opportunity to amend that identified defect.

## IV. The blanket judgment and Rule 59(e) denial should be vacated; at minimum, Count VI requires remand for ordinary adjudication.

### A. *Branch Consultants* and *Thompson* support remand because the County lane never received County-specific motion practice or a ruling on a County motion.

The adoption order granted only Wheless's motion, denied ECF Nos. 42, 44, 46, 50, 52, and 56 as moot, and did not decide ECF Nos. 25 and 48. ROA.913. The mootness dispositions left each movant's own grounds presented but unadjudicated. A properly briefed, claim-specific ground may be offered as an alternative basis for affirmance within the judgment's scope, but presentation below neither made it a ground of the judgment nor requires first-instance appellate decision.

*United States ex rel. Branch Consultants v. Allstate Insurance Co.* supplies the direct rule. The Court "may decide a case on any ground that was presented to the

trial court," but it is "not required to do so." 560 F.3d 371, 381 (5th Cir. 2009). After reversing the ground that produced dismissal, the Court remanded the unadjudicated alternative defenses, including a pleading challenge whose analysis was "customarily done in the first instance" by the district court. *Id.* at 380–81.

*Thompson* applies the same course at Rule 12. When the district court's order did **not** discuss a preserved fabrication theory, this Court "decline[d] to address it in the first instance" and remanded for the district court to decide whether it was adequately pleaded. *Thompson*, 183 F.4th at 380–81. The omission of a first-instance ruling produced remand, not a substitute appellate pleading decision.

The same course fits Count VI. The certified docket and orders show that Tarrant County was served after judgment and that no County-specific adversarial cycle or ruling on a County motion preceded dismissal of the alleged favored-filer policy, the precise clerk-side function, municipal attribution, the underlying Rule 145 entitlement, or moving-force causation. ROA.10-12, 700-703, 913, 915-916. The FCR instead reached the County through Wheless's motion. ROA.690-703. The Count VI objection preserved the integrated County mechanism and its completed injury. ROA.869-894.

Section II.B develops the Count VI policy, favored-filer exception, function-specific policymaker, federal predicate, causation, injury, and answers to the blanket grounds. Affirmance on a new County-specific ground would supply the

first adjudication, not review one. Count VI should return for County-specific adjudication, while the remaining claim-specific lanes remain preserved for ordinary first-instance treatment.

**B. The judgment's express without-prejudice limit prevents enlargement on appeal.**

Appellate courts review judgments, not opinions. *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 876 F.3d 119, 126 (5th Cir. 2017). *Jennings* fixes the cross-appeal boundary: without a cross-appeal, an appellee may not attack the decree "with a view either to enlarging his own rights" or "lessening the rights of his adversary." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015). The separate judgment dismissed every claim without prejudice. ROA.914. Under *Jennings*, appellees cannot use Appellants' appeal to obtain dismissal with prejudice or any more preclusive disposition without a cross-appeal.

Appellees may defend the existing without-prejudice judgment on a properly preserved ground, but absent a cross-appeal they may not convert it into dismissal with prejudice or another more preclusive disposition. *Arvie v. Broussard*, 42 F.3d 249, 250 (5th Cir. 1994) (per curiam) (refusing, without a cross-appeal, to convert dismissal without prejudice into dismissal with prejudice); *see also* *United States v. Johnson-Ellis*, No. 20-50833, 2022 WL 3136978, at *2 n.1 (5th Cir. Aug. 5, 2022) (per curiam) (unpublished); *accord* *Guida v. Cass Cnty., Neb.*, No. 25-2470, slip op. at 5–6 (8th Cir. Aug. 20, 2026) (declining to

reach a fully briefed alternative merits ruling because doing so would effectively convert a without-prejudice dismissal into a with-prejudice disposition); *Jennings*, 574 U.S. at 276. Because no appellee cross-appealed, none may obtain independent reversal of a mootness disposition or any other more favorable judgment.

Several proposed orders requested dismissal with prejudice, but the district court entered none of them. ROA.730, 772, 787, 832. The Rule 58 judgment instead dismissed every claim against every defendant without prejudice. ROA.914. An unentered request is not the judgment.

The court did not explain how that single disposition followed from the FCR's materially different grounds. The FCR's standing and sovereign-immunity conclusions presented threshold questions whose consequences depend on the particular claim, defendant, capacity, remedy, and asserted ground. The FCR's judicial-immunity, qualified-immunity, *Monell*, and futility conclusions instead involved claim-specific merits, affirmative-defense, and amendment questions. Yet neither the FCR nor the judgment mapped each asserted ground to every affected plaintiff, count, defendant, capacity, challenged function, remedy, and dismissal consequence. ROA.684-703, 914.

That omission prevents meaningful claim-specific appellate review. This Court may review preserved legal questions de novo, but it should not supply the missing first-instance mapping between the asserted grounds and fourteen

differently situated defendants. Affirmance of Count VI on a newly selected County-specific ground would not review the district court's adjudication; it would create the first such adjudication on appeal. And because the judgment expressly dismissed without prejudice, no appellee may obtain a more preclusive disposition without a cross-appeal. The appropriate course is vacatur and remand so the district court may identify and apply the controlling ground, if any, claim by claim and defendant by defendant.

**C. The Rule 59(e) denial must be vacated because the timely motion identified the preserved procedural errors and requested claim-specific correction and targeted amendment.**

The timely Rule 59(e) motion requested the correction now sought: vacate the case-wide judgment, restore the action, adjudicate the motions actually filed, separate the Rule 145 and Tuter/Roach claims, and permit targeted amendment if the court identified a curable defect. ROA.940-941.

The district court denied that request and kept the case closed. ROA.943. Because the same preserved legal errors controlled the judgment and the postjudgment ruling, the Rule 59(e) denial receives the underlying de novo review. *Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341, 344 (5th Cir. 2025). The separate request for postjudgment amendment is governed by Rule 15 considerations under *Calhoun*, 78 F.4th at 853–55. Both aspects of the denial must be vacated with the judgment.

**D. Vacatur restores each preserved claim for claim-specific adjudication; at minimum, Count VI must be remanded.**

The Court should vacate the final judgment and Rule 59(e) denial and remand Counts I-III and the related Count IV declaratory vehicle as adopted by each Appellant, Randles's Count V, and Yan's Counts VI-VII for plaintiff-, defendant-, function-, capacity-, remedy-, and claim-specific adjudication. ROA.267-298, 914, 943. The restored prospective lanes are: Randles against Blacklock, Evans, Catterton, and Harris; Ross against Blacklock, Brown, and Dean; Tuter against Blacklock, Wheless, Roach, and Cooks; and Yan against Blacklock, Evans, Terry, Grimaldi, Catterton, and Harris, limited in each instance to the applicable Counts I-III theory and pleaded official-capacity remedy. Count IV remains the declaratory vehicle against Blacklock, Evans, Brown, and Wheless as pleaded. Count V returns against Evans individually. Counts VI-VII return against Wilder, Grimaldi, and Moss individually and Tarrant County. This mapping neither asks the panel to decide a new alternative defense nor treats one actor's defense as dispositive of another's lane. Count VI independently supplies the minimum partial-vacatur route.

On remand, the operative First Amended Complaint controls merits review. A proposed amended complaint would govern only Rule 15 futility. If the district court identifies a curable Count VI defect, it should permit a targeted amendment directed to the policy, policymaker, entitlement, or moving-force element actually found deficient.

Assuming arguendo, without conceding, that Younger applies to Count VI damages the state proceeding cannot redress, Deakins requires a stay, not dismissal. Remand likewise preserves the other Appellants' distinct lanes for first-instance adjudication without a panel ruling on their merits.

**Conclusion**

The Court should vacate the final judgment and Rule 59(e) denial and remand every pleaded lane mapped in Section IV.D for claim-specific adjudication. ROA.267-298, 914, 943. The panel need not decide unadjudicated defendant-specific grounds in the first instance. At minimum, it should vacate Count VI because the FAC alleges the protected Rule 145 benefit, the County's favored-filer exception, repeated incidents and notice, Wilder's function-specific policymaking role, moving-force causation, completed injury, and damages. ROA.243-250, 280-283. Assuming arguendo, without conceding, that Count VI requires greater specificity, the district court should permit targeted amendment after identifying the defect. Any cognizable damages portion subject to abstention must be stayed rather than dismissed.

**Signatures**

Each Plaintiff-Appellant personally joins this brief under Federal Rule of Appellate Procedure 28(i), subject to the Statement Regarding Joint Pro Se Presentation and Claim-Specific Adoption. No Appellant purports to represent another. Each Appellant consents to the inclusion of the electronically represented signature below and to Kaitlan Ross serving as the transmitting filer for this jointly signed brief under the Court's pro se filing procedures and Fifth Circuit Rule 25.2.10.


**/s/ Samuel Randles**
Samuel Randles
5001 SH114E, Apt. 1313, Roanoke, TX 76262
(214) 250-6187
randles.sam@gmail.com
Pro Se Plaintiff-Appellant

**/s/ Kaitlan Ross**
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294
Kaitlan.ross33@gmail.com
Pro Se Plaintiff-Appellant

**/s/ Patrick Wayne Tuter**
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152
patrick762soldier@hotmail.com
Pro Se Plaintiff-Appellant

**/s/ Conghua Yan**
Conghua Yan
2140 E. Southlake Blvd., Suite L-439, Southlake, TX 76092
(214) 228-1886
arnold200@gmail.com
Pro Se Plaintiff-Appellant

**Certificate of Service**

I certify that on August 30, 2026, I filed the foregoing brief by email with the Clerk under the Court's instructions for this pro se filing and served it by email on all counsel of record at their electronic addresses of record: Scot M. Graydon (scot.graydon@oag.texas.gov); Karen S. Mitchell (at the electronic address supplied by the Clerk for this appeal); Katherine Elizabeth Owens (keowens@tarrantcountytx.gov); and Craig Manning Price (cmprice@tarrantcountytx.gov). I also copied the other joint Appellants at the email addresses stated in the signature block.

*/s/ Kaitlan Ross*

Kaitlan Ross

**Certificate of Compliance**

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,609 words, excluding the parts exempted by Rule 32(f). I further certify that this brief complies with Rule 32(a)(5) and (6) because it uses a 14-point proportionally spaced serif typeface.

*/s/ Kaitlan Ross*

Kaitlan Ross, Plaintiff-Appellant